612 A.2d 542

**Sharon BURGESS, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (PLAZA FOODS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 11, 1991.

Decided March 25, 1992.
(Previously filed as non-report).

Publication Ordered June 26, 1992.

Petition For Allowance of Approval Denied Nov. 9, 1992.

14

Edward J. Abes, for petitioner.

George H. Thompson, for respondent.

Before COLINS and PELLEGRINI, JJ., and BARBIERI, Senior Judge.

COLINS, Judge.

Sharon Burgess (Burgess) appeals an order of the Workmen's Compensation Appeal Board (Board) affirming the referee's grant of Plaza Foods' (employer) petition for modification of workmen's compensation benefits.

After listening to the testimony and examining the documents and evidence submitted by both parties, the referee made the following pertinent findings of fact:

1.  The instant petition for modification and a supersedeas was filed by Plaza Foods (employer) with the Bureau on September 8, 1989, alleging that it offered suitable work to claimant. An answer thereto was filed.

2.  On November 22, 1989, a supersedeas was granted.

3.  In accordance with the notice of compensation payable dated May 7, 1987, Sharon A.J. Burgess (claimant) was receiving compensation for total disability at the weekly rate of $162.36 for compensable cervical and lumbosacral strains she sustained on April 4, 1987.

4.  At the time of said injury, claimant was employed as a cake decorator at average weekly wages of $180.39.

5.  It is deduced from the record that her neck injury cleared because there is no reference to such injury in the medical reports proffered in this proceeding.

6. On November 14, 1989 (the date of the initial hearing) claimant received notice for the first time of all of these facts:

(a) That Drs. Hottenstein and Klein were of the opinion that she was capable of performing the work of lottery salesclerk after they were made aware of the duties of that job;

(b) That such a position was open and was offered to her by employer;

(c) That employer provided her with a good description of the job;

(d) That employer noticed her of the hours, wages, and working conditions thereof; and

(e) That Dr. Hottenstein notified employer of his approval of the job before employer offered her the position.

7. The minimum hours of employment for that job were four hours per day and 20 hours per week at the hourly rate of $5.35; the maximum hours per week were 35.

8. After receiving Defendant's Exhibit "D", claimant went to employer's office discussed the job offer and gave employer a list of times she was available for work.

9. The following day, she called employer and notified employer that she could not report for work because of domestic problems.

10. Employer thereafter sent to claimant her work schedules for the weeks ending November 4, 11, and 18, 1989 (Defendant's Exhibits "E", "F", and "G").

11. Claimant's response to employer to at least two of those schedules was that they were unacceptable and she had other commitments.

12. Unknown to employer was the fact that claimant had matriculated at the North Campus of the Community College of Allegheny County in January, 1989, as a full-time student in the computerated drafting course. The first time employer became aware of her college-enrollment was sometime after August 25, 1989, when claimant went to employer's office to discuss the job offer.

13. Not only was the claimant capable of performing the duties of the job offered to her at all relevant times, but she admitted in her testimony that she felt that she could do the work.

14. Because of her domestic problems and because of her attending college, she refused to accept the job as offered to her.

15. Employer acted in good faith at all relevant times.

16. Employer established that other, suitable work was actually available to and within the reach of claimant which she was capable of obtaining from November 14, 1989.

17. Not only did those two physicians approve of the job description, but they also did not restrict her hours of employment to less than 35 hours per week.

The Board affirmed the referee's decision and dismissed Burgess' appeal, reasoning that she failed to accept the lottery salesclerk position in good faith and, instead, pursued other endeavors which precluded her from accepting the job offered to her by employer.

■ Burgess contends that the Board erred in affirming the referee's grant of modification in this matter. She contends that employer failed to act in good faith by offering her the lottery salesclerk position, which did not accommodate her college class schedule. Obviously, according to Burgess, this position was not available to her, because the position would have forced her to discontinue her studies in computerated drafting at the Community College of Allegheny County and would have caused her to lose a large amount of money already spent for tuition and expenses for her education. Burgess contends that she only applied to and started the computer drafting program after she was contacted by the Pennsylvania Office of Vocational Rehabilitation (OVR) and that she was not interested in retraining at all until she was injured. According to Burgess, but for her work-related injury, she would not have had to seek retraining in the first place. Therefore, Burgess argues that employer should still be responsible for her workmen's compensation benefits even

though she is seeking retraining under the directives of the Vocational Rehabilitation Act.[1]

■ Our scope of review in a workmen's compensation matter is limited to whether constitutional rights have been violated, an error of law has been committed or whether the findings of fact are not supported by substantial evidence. Furthermore, the referee is the ultimate finder of fact and has the authority to make credibility determinations. *Beres v. Workmen's Compensation Appeal Board (Lawson's Convenience Store)*, 140 Pa. Commonwealth Ct. 497, 593 A.2d 939 (1991).

■ An employer is entitled to have a claimant's benefits modified upon the change of a claimant's disability status and must meet the requirements articulated in the Supreme Court case of *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). These requirements include:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*Id.* at 252, 532 A.2d at 380.

It is uncontested that Burgess has partially recovered from her original injuries and that she is capable of performing the lottery salesclerk position. However, the issue in this case pertains to whether this position was actually available to Burgess at the time she applied for it. *Kachinski* requires

1. Act of December 20, 1988, P.L. 1306, *as amended*, 43 P.S. §§ 682.1–682.18.

that an employer must show that the job referral made to a claimant is for work which is *actually available*. The Supreme Court stated:

> [A] position may be found to be *actually available*, or within the claimant's reach, only if it can be performed by the claimant, having regard to his physical restrictions and limitations, his age, his intellectual capacity, his education, his previous work experience, and other *relevant considerations, such as his place of residence.*

*Id.* at 251, 532 A.2d at 379 (quoting *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 91 Pa. Commonwealth Ct. 543, 546, 498 A.2d 36, 38–39 (1985) (emphasis added)).

Section 11 of the Vocational Rehabilitation Act [2] provides that the OVR "may provide vocational rehabilitation and vocational training and services to individuals who were injured in industrial accidents or who incurred industrial disabilities and are entitled to benefits under the Act of June 2, 1915, (P.L. 736, No. 338), known as The Pennsylvania Workmen's Compensation Act [*as amended*, 77 P.S. §§ 1–1031]." Provisions of the Vocational Rehabilitation Act are implemented by the OVR which provides counseling to disabled claimants, as well as funding to assist in the pursuit of retraining and education. In addition to benefits under the Vocational Rehabilitation Act, claimants who have been injured in the course of employment are also entitled to workmen's compensation benefits pursuant to Section 301 of The Pennsylvania Workmen's Compensation Act (Act).[3]

Both the Act and the Vocational Rehabilitation Act are related, and both attempt to assist workers who have been injured in the course of their employment. Hence, they are in *pari materia*. Section 1932 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1932, provides: "(a) Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things.

**2.** 43 P.S. § 682.11.

**3.** 77 P.S. § 431.

(b) Statutes in pari materia shall be construed together, if possible, as one statute." Applying 1 Pa.C.S. § 1932 statute, we conclude that the Vocational Rehabilitation Act and the Act should be read together to provide both rehabilitation assistance and compensation to employees who have been injured in the course of their employment. An employee's receipt of benefits under the Act should not preclude his or her receipt of rehabilitation assistance under the Vocational Rehabilitation Act.

Moreover, an employee who has been advised by the OVR, pursuant to the Vocational Rehabilitation Act, to seek vocational training is not acting in bad faith when he or she requests a work schedule to accommodate the vocational retraining. In the present case, evidence of record indicates that Burgess followed through and applied for the position as lottery salesclerk in good faith. She merely requested a work schedule to accommodate her college schedule. She started the full-time college studies program as a result of the urging of the OVR. Hence, it was not unreasonable for her to request a work schedule that would allow her to finish her college studies leading towards her retraining in a skilled field. The position presented to her by employer after it became aware that she was pursuing college retraining was not available to Burgess, because that position failed to accommodate the *relevant consideration* of her college retraining.[4]

■ The second issue in this case pertains to the referee's finding of fact No. 20 which states:

There is no credible evidence that claimant looked for work on her own; that she obtained other work but was unable to perform it; that she asked employer for other work but was told there was none; that she tried to return to her job but

4. The present case is not the first time in which an injured employee has received workmen's compensation benefits while pursuing college education. In *Williams & Company, Inc. v. Workmen's Compensation Appeal Board,* 39 Pa. Commonwealth Ct. 369, 395 A.2d 1028 (1978), this Court affirmed the referee's finding that, when an employer failed to prove the existence of the job offered to a claimant, that the claimant was justified in refusing to discontinue his education in order to take the sedentary job which had not previously existed and was of doubtful duration.

was unable to; or that she had begun a college education either prior to her employment with employer or prior to her work injury.

We hold that the referee erred in finding that Burgess had the burden of finding work to replace her pre-injury position.

In *Kachinski,* the Supreme Court stated:

To impose on the injured party the duty to find alternative work under pain of foregoing the compensation to which he has become entitled is to condition one's receipt of compensation on something other than the injury itself: a concept far removed from the salutary purpose of workmen's compensation to provide relief due to injuries caused in the workplace.

*Id.* at 250, 532 A.2d at 379. *Kachinski* specifically articulates that it is the employer who must produce evidence of a referral or referrals to open jobs which fit the claimant's occupational category. *See also Four–Way Construction Co. v. Workmen's Compensation Appeal Board (Snyder),* 113 Pa. Commonwealth Ct. 235, 536 A.2d 873 (1988). Hence, the Board's affirmance of the aforementioned referee's finding is in error.

Based on the foregoing, we reverse the Board and the referee's grant of employer's modification petition.

## ORDER

AND NOW, this 25th day of March, 1992, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is reversed.